**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION**

| | | |
|---|---|---|
| Dwight A. Loftis, Mikell "Mike" Burns, Patrick B. Haddon, Adam M. Morgan, T. Alan Morgan, Ashley B. Trantham, Michelle Shuman and the South Carolina Public Interest Foundation, on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>Greenville County Council and Greenville County,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 6:23-cv-04744-TMC<br><br>**FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF, S.C. CODE 30-4-100 RELIEF (FOIA)** |

**NOW COME** the Plaintiffs, by their undersigned attorney, and as an Amended Complaint against the Defendants, would show unto the Court:

1.     Plaintiffs Dwight A. Loftis is a duly elected State Senator, representing parts of Greenville County and members of the Greenville County Legislative Delegation.

2.     Plaintiffs James Mikell "Mike" Burns, Patrick B. Haddon, Adam M. Morgan, T. Alan Morgan, Ashley B. Trantham are duly elected State Representatives, representing parts of Greenville County and members of the Greenville County Legislative Delegation.

3.     Plaintiffs Dwight A. Loftis, James Mikell "Mike" Burns, Patrick B. Haddon, Adam M. Morgan, T. Alan Morgan, Ashley B. Trantham and Michelle Shuman, are citizens, residents, taxpayers, and registered electors of Greenville County, South Carolina.

4.     Plaintiff South Carolina Public Interest Foundation is a not-for-profit corporation organized and existing under the laws of the State of South Carolina and dedicated to the public interest, including the proper application and enforcement of South Carolina law and Constitution.

5.    The Defendant Greenville County ("County") is a political subdivision of the State of South Carolina.

6.    The Defendant Greenville County Council ("Council") is a body politic and the governing body of Greenville County.

7.    This Court has jurisdiction pursuant to the South Carolina Code of Laws, the South Carolina Rules of Civil Procedure, and South Carolina Code §15-53-10 *et seq*, known as the Uniform Declaratory Judgment Act, S.C. Code §30-4-10 *et. seq*. and S.C. Code §30-4-100.

8.    This Court possesses jurisdiction under the following decisions, which address public interest standing and taxpayer standing: *South Carolina Public Interest Foundation v. South Carolina Department of Transportation*, 421 S.C. 110, 804 S.E.2d 854 (2017); *South Carolina Public Interest Foundation v. Lucas* , 416 S.C. 269, 786 S.E.2d 124 (2016); *South Carolina Public Interest Foundation v. South Carolina Transportation Infrastructure Bank*, 403 S.C. 640, 744 S.E.2d 521 (2013), *Sloan v. Friends of the Hunley,* 393 S.C. 152, 711 S.E.2d 895 (2011), *American Petroleum Institute v. S.C. Dept. of Revenue,* 382 S.C. 572, 677 S.E.2d 16 (2009), *South Carolina Public Interest Foundation v. Harrell,* 378 S.C. 441, 663 S.E.2d 52 (2008), *Sloan v. Department of Transportation,* 379 S.C. 160, 666 S.E.2d 236 (2008), *Sloan v. Hardee,* 357 S.C. 495, 640 S.E.2d 457 (2007); *Cornelius v. Oconee County,* 369 S.C. 531, 633 S.E.2d 492 (2006); *Sloan v. Department of Transportation,* 365 S.C. 299, 618 S.E.2d 876 (2005), *Sloan v. Wilkins,* 362 S.C. 430, 608 S.E.2d 579 (2005); *Sloan v. Sanford,* 357 S.C. 431, 593 S.E.2d 470 (2004); *Sloan v. Greenville County,* 356 S.C. 531, 590 S.E.2d 338 (Ct. App. 2003), *Sloan v. School District of Greenville County,* 342 S.C. 515, 537 S.E.2d

299 (Ct. App. 2000), *Baird v. Richland County,* 333 S.C. 519, 511 S.E.2d 69 (1999), *Newman v. Richland County Historic Preservation Commission,* 325 S.C. 79, 480 S.E.2d 72 (1997); and under S.C. Code Ann. §15-53-10 *et seq.,* known as the Uniform Declaratory Judgment Act.

9.     This action raises issues of great public importance, namely the unlawful actions of public officials and the misuse of taxpayer money. "A resolution for future guidance is needed here because this case involves the conduct of government entities and the expenditure of public funds, a prompt decision is necessary, and it is likely the situation will occur in the future." *Adams v. McMaster,* 432 S.C. 225, 236, 851 S.E.2d 703, 708 (2020).

10.    Plaintiffs ask the Court to grant them standing as taxpayers, citizens and residents of Greenville County and based upon the great public importance of the issues this action raises.

11.    Venue is properly placed in Greenville County.

## UNDERLYING FACTUAL ALLEGATIONS
### (Partial Factual History and Partial Applicable Law)

12.    The Home Rule Act of 1975 is the source of authority for County Government. Prior to 1975, county government was an arm of the state government at the county level. Each year the state legislature passed a supply bill, which was the county budget.

13.    Home Rule played an important role in "eliminat[ing] archaic provisions" of the Constitution by strengthening "proper safeguards for sound State, County, and Local governments. *South Carolina in Hosp. Ass'n of S.C., Inc. v. Cty. of Charleston* 320 S.C. 219, 225, 464 S.E.2d 113, 117 (1995).

14.    The "West Committee" held hearings and conferences in the late 1960s to early 1970s seeking to place control of management of county and municipal affairs in the hands of

local officials. *Hosp. Ass'n of S.C.*, 320 S.C. at 225, 464 S.E.2d at 117. The Committee

unanimously recommended amendments to the Constitution in favor of Home Rule. *Id.*

15.     The S.C. Constitution as amended provides:

The General Assembly shall provide by general law for the structure, organization, powers, duties, functions, and the responsibilities of counties, including the power to tax different areas at different rates of taxation related to the nature and level of governmental services provided.

*Id.,* Article VIII, Sec. 7

16.     The S.C. Constitution as amended provides:

**Each political subdivision** of the State as defined in Section 14 of this article and each school district of this State shall prepare and maintain **annual budgets** which provide for sufficient income to meet its estimated expenses for each year. Whenever it shall happen that the ordinary expenses of a political subdivision for any year shall exceed the income of such political subdivision, the governing body of such political subdivision shall provide for levying a tax in the ensuing year sufficient, with other sources of income, to pay the deficiency of the preceding year together with the estimated expenses for such ensuing year. The General Assembly shall establish procedures to ensure that the provisions of this section are enforced. (Emphasis added.)

*Id.,* Article X, Sec. 7(b)

17.     "The General Assembly may provide for the ad valorem taxation by the State or any of its

subdivisions of all real and personal property."

*Id.,* Article X. Sec. 1

18.     "Any **tax which shall be levied shall distinctly state the public purpose** to which the

proceeds of the tax shall be applied."

*Id.,* Article X, Sec. 5.  (Emphasis added)

19.     "**Money shall be drawn from the treasury** of the State or the treasury of any of its

political subdivisions **only in pursuance of appropriations made by law**.

*Id*., Article X, Sec. 8. (Emphasis added.)

20.   "**An accurate statement of receipts and expenditures of the public money** shall **be published annually** in such manner as prescribed by law."

*Id*., Article X, Sec. 9.  (Emphasis added.)

21.   S.C. Code §6-1-50 provides:

**Counties** and municipalities receiving revenues from state aid, currently known as Aid to Subdivisions, **shall submit annually to the Revenue and Fiscal Affairs Office a financial report** detailing their sources of revenue, expenditures by category, indebtedness, and other information as the Revenue and Fiscal Affairs Office requires. (Emphasis added.)

22.   As set forth below, the Defendants have been violating their constitutional, statutory and common law duties and unlawfully delegating their duties of budgeting and financial management as a legislative body in their budget and reporting requirements, abrogating their responsibilities to the public to conduct their business in a manner to insure an informed citizenry and to conduct their business in an open manner and by failing to provide a check against curruption by failing to be accountable to the public.

## FIRST CAUSE OF ACTION
### (Biennium Budget Process/Per Se Unlawful)

23.   The Plaintiffs incorporate by reference the preceding allegations as if fully restated herein.

### The Biennium Budget Process Violates State and County Law and Legislative Intent.

24.   As part of the Home Rule Act the Legislature passed S.C. Code § 4-9-140, requiring annual budgets:

County council **shall adopt annually** and **prior to the beginning of the fiscal year operating and capital budgets** for the operation of county government and shall in such budgets identify the sources of anticipated revenue including taxes necessary to meet the financial requirements of the budgets adopted.  Council shall further provide for the levy and collection of taxes necessary to meet all budget requirements except as provided for by other revenue sources.

**Council may make supplemental appropriations** which shall specify the source of funds for such appropriations. **The procedure for approval of supplemental appropriations shall be the same as that prescribed for enactment of ordinances.**

For the purposes of this section **a supplemental appropriation shall be defined as an appropriation of additional funds which have come available during the fiscal year and which have not been previously obligated by the current operating or capital budget.** The provisions of this section shall not be construed to prohibit the transfer of funds appropriated in the annual budget for purposes other than as specified in such annual budget when such **transfers are approved by the council.**

In the preparation of **annual budgets** or **supplemental appropriations**, council may require such reports, estimates and statistics from any county agency or department as may be necessary to perform its duties as the responsible fiscal body of the county. (Emphasis added.)

25. Greenville County Code §7-68 also requires annual budgets:

§ 7-68 ADOPTION OF BUDGET; LEVY AND COLLECTION OF TAXES.

The **county council shall adopt annually** and prior to the beginning of the fiscal year **operating and capital budgets** for the operation of county government and shall in such budgets identify the sources of anticipated revenue including taxes necessary to meet the financial requirements of the budgets adopted. The council shall further provide for the levy and collection of taxes necessary to meet all budget requirements except as provided for by other revenue sources. (Emphasis added.)

26. The State of South Carolina uses an annual budget process and as set forth above and elsewhere in this complaint it has established in its statutory and common law and has clearly directed the Defendant to use an annual budgeting process. Plaintiffs are informed and believe that since 2008, Greenville County has used the Biennium Budget Process in violation of the "annual budget" requirements in S.C. Code Ann. §4-9-140 et. seq. the "next fiscal year" and "current fiscal year", "next year's" and "proposed budget" requirements of S.C. Code §6-1-80 et. seq., other provisions of state law, Greenville

County Code §7-68, other provisions of the County Code and other statutory and decisional law.

27. On June 8, 2023, administrator Joe Kernell stated that Greenville County is the only county in South Carolina to utilize a two-year budget process.

28. This means that Greenville County does not consider a budget every year. The Budget for the second year of the Biennium Budget is introduced with the Budget for the first fiscal year.

29. The use of the Biennium Budget Process violates nearly all regularly accepted budgeting principles and is an unlawful delegation of legislative authority by the Defendants to the County Administrator and his appointees. Coupled with the Defendants' failures to require compliance with requirements for supplemental appropriations and extra-ordinance transfers which are stated in subsequent causes of action, these processes aside from violating the dictates of state and county law creates an unlawful absence of oversight of the fiscal matters of Greenville County by Greenville County Council.

30. On May 16, 2023, Greenville County Council considered two budget ordinances at first reading to wit: (1) The Administration's proposed Budget Ordinance for the fiscal year from July 1, 2023 to June 30, 2024 (Hereinafter referred to as "FY 2024") and (2) The Administration's proposed Budget Ordinance for the fiscal year from July 1, 2024 to June 30, 2025 (Hereinafter referred to as "FY 2025") for first reading.

31. These ordinance introductions at first reading preceded the publication of the Notice of Public Hearing on those Budgets which were published in the Greenville Journal on May 19, 2023. As discussed later in this Complaint, the figures published were different than the figures in both Budget Ordinances.

32. Since the actual text of an ordinance at first reading is not published in a newspaper and since state law allows ordinances to be introduced by title only, the public would not be fully apprised of the particulars of the ordinances at first reading.

33. These ordinance introductions at first reading were followed by a Budget Workshop. The Budget Workshop was held on May 22, 2023.

34. At the Budget Workshop at 3:33 p.m. on May 22, 2023, it was revealed that the proposed budgets increased the ad valorem taxes imposed by Greenville County by 22.5%.

35. Additionally, at the budget workshop the County Administrator acknowledged that "There were transfers that occurred through governmental funds as allowed by law, such as Hospitality Tax. Mr. Kernell stated that he received an email alleging 'all the numbers were different' in the budget ordinance from those he initially presented. He stated the numbers were different." He further stated that the dollar amount for the tax increase was "$32,731,270 and the General Fund was $22 million" (Unapproved minutes of Budget Workshop published August of 2023.)

36. The budgets also included increased road fees of $11,800,000 for the FY2023 budget and $12,337,000 FY2024.

37. On May 22, 2023, the finance committee for Greenville County Council met on **both** budget ordinances and unanimously voted **both** budget ordinances out of committee back to consideration by County Council with no stipulations or restrictions.

38. Second Reading and Public Hearings on the FY2024 and the FY2025 budgets were heard on June 6, 2023. Issues related to the Public Hearings notices and variances with the figures in the Ordinances are set forth in subsequent causes of action.

39.     Both Ordinances were heard at second reading and amended at second reading on June 6, 2023 as set forth below;

a.  FY2024 Budget was amended from a proposed 11 mill increase to a 7 mill increase as follows: (1) Reduce the proposed General Fund millage rate by 3.0 mills (2) Increase Building / Code Enforcement Revenues by $2,947,465.00 (3) Increase transfers from Workers Compensation Fund by $500,000 (4) Increase transfer from Infrastructure Bank by $1,000,000 (5) Reduce Health Insurance premiums by $3,000,000 (6) Reduce transfer from the General Fund to Capital Projects for the following projects: (a) Information Technology - $400,000 (b) Register of Deeds Historical Documents - $500,000 (c) Sheriff's Office Target System - $800,000 (7) Reduce the Solid Waste millage rate by 0.5 mill (8) Increase Solid Waste Revenue by $1,500,000 (9) Reduce the Natural Resources Fund by $2,000,000 for the Conestee Dam (10) Reduce Parks, Recreation and Tourism millage rate by 0.5 mill (11) Increase transfer from Hospitality Tax Fund by $1,500,000.00. (County Council minutes for June 6, 2023)

b.  The FY2025 Budget was also amended from a proposed 11 mill increase to a 7 mill increase as follows: (1) Reduce the proposed General Fund millage rate by 3.0 mills (2) Increase Building / Code Enforcement Revenues by $3,006,414.00 (3) Increase transfer from Workers Compensation Fund by $500,000.00 (4) Increase transfers from Infrastructure Bank by $1,000,000.00 (5) Reduce Health Insurance premiums by $3,000,000.00 (6) Reduce transfer from the General Fund to Capital Projects for the following projects: a). Information Technology - $400,000.00 b). Register of Deeds Historical Documents - $500,000.00 c). Travelers Rest Maintenance Camo Roof Replacement - $280,000.00 d). Video Laryngoscopy - $200,000.00 (7) Reduce the Solid

Waste millage rate by 0.5 mill (8) Increase Solid Waste Revenue by $1,500,000.00 (9) Add $500,000.00 to the Natural Resources Fund for the Conestee Dam (10) Reduce Medical Charities fund by $500,000.00. (County Council minutes for June 6, 2023)

40. The FY2025 Budget did not actually involve a proposed 11 mill increase from the FY2024 Budget but a zero millage increase from the FY2024 Budget. However, since it encompassed an 11 mill increase over the FY2023 Budget due to the Biennium Budget Process, Council did not know what the final FY2024 budget figures would be until the FY2024 Budget was approved on June 23, 2023.

41. There was no vote on June 6, 2023 to hold or stay the third reading of the FY2025 Budget Ordinance past the next meeting scheduled on June 20, 2023. According to the Council Rules and parliamentary procedures, items that are introduced at first reading and then reported out of committee appear on the next Council agenda unless some vote to table, suspend or delay consideration of that item is made. No such motion was made. Nevertheless, the FY2025 Budget at third reading was not considered by Council on June 20, 2023 or the special meeting on June 23, 2023.

42. The third reading solely on the FY2024 Budget Ordinance, as amended was held on June 20, 2023 and passage of the FY2024 Budget Ordinance failed on a 6 to 6 vote with a proponent of the ordinance voting to deny it so it could be reconsidered. The Third Reading version of the ordinance for FY2024 did not accurately reflect those amendments stated on the record at second reading as set forth below. The same is true for Third Reading of the FY2025 Budget Ordinance.

43. A notice of special meeting was posted on June 22, 2023 for a special meeting on June 23, 2023 to reconsider the FY2024 Budget Ordinance. The Council unanimously agreed to

reconsider the denial of the Ordinance and this time it passed on an 8 to 4 vote. The FY2025 Budget Ordinance as amended was not considered at this meeting nor was there a motion to hold or delay its consideration at their meeting.

44.     The FY2025 Budget Ordinance as amended at second reading on June 6, 2023 was heard at a third reading over a month later on July 18, 2023. At the third reading of the FY2025 Budget Ordinance, Councilor Bradley moved to delay the review and approval of the FY2025 budget until March 2, 2024 allowing Council to review the actual expenditures of the financial year 2024 to determine expenditures for the following year.  He stated, "In other South Carolina counties, it was customary to review the Budget for the following year only after assessing expenditures and new revenue for the current year, allowing Council to make formal decisions based upon actual financial data rather than relying solely on projected figures." That motion failed on a 4 to 8 vote. The FY2025 Budget Ordinance as amended was approved on a vote of 8 in favor and 4 opposed.

45.     The use of the Biennium Budget Process violates the statutory and Greenville County Code requirements of "annual" Budgets as set forth above.  It diminishes the constitutionally and statutorily mandated effectiveness of control by County Council over spending in the appropriation process and makes adjusting to changing budgetary and economic conditions more difficult.  Budget discipline and oversight suffer when major policies are reviewed less frequently.

46.     Additionally, the use of the Biennium Budget Process also constitutes an unlawful delegation of authority by Greenville County Council and conflicts with other legal requirements, and conflicts in particular with the Public Notice requirements. Since the Public Notice requirements inform the public of the present fiscal year's revenue and

expenses and the Biennium Budget relies on the **projected** Budget for the first year, it can never state the present fiscal year's revenue and expenses when it compares those to the proposed Budget for the second year of the Biennium Budget.

47.   Plaintiffs request that the Court rule that the enactment of the FY 2024 and FY2025 Budget Ordinances should be invalidated due to the Defendants' use of the Biennium Budget process, that the Defendants be enjoined from further use of that process and for attorneys' fees and cost be awarded pursuant to S.C. Code §15-77-300 *et. seq.*

**SECOND CAUSE OF ACTION**
**(Failure to Give Proper Notice of Budget/Variance in Ordinance Versions)**

48.   The Plaintiffs incorporate by reference the preceding allegations as if fully restated herein.

**The Defendants Have Blatantly Violated S.C. Code § 6-1-80**

49.   The General Assembly enacted 1995 Act No. 146 to address county budgeting and taxation, which requires notice to the public:

> § 6-1-80. Budget adoption
>
> (A) A county, municipality, special purpose or public service district, and a school district shall provide **notice to the public** by advertising the public hearing before the adoption of its **budget for the next fiscal year** in at least one South Carolina newspaper of general circulation in the area. This notice must be given not less than fifteen days in advance of the public hearing and must be a minimum of two columns wide with a bold headline.
>
> (B) **The notice must include** the following:
> (1) the governing entity's name;
> (2) the time, date, and location of the public hearing on the budget;
> (3) **the total revenues and expenditures from the current operating fiscal year's** budget of the governing entity;
> (4) **the proposed total projected revenue and operating expenditures for the next fiscal year** as estimated in next year's budget for the governing entity;
> (5) **the proposed or estimated percentage change** in estimated operating budgets between the **current fiscal year** and the proposed budget;
> (6) **the millage for the current fiscal year**; and

(7) the estimated millage in dollars as necessary for the next fiscal year's proposed budget.

(C) This notice is given in lieu of the requirements of Section 4-9-130.

(Emphasis added.)

50.    The notice of public hearing requirement in S.C. Code §6-1-80(b) is intended to inform the public of the amounts in the Budget being considered by Council and the variance of those amounts from the previous year's Budget. This allows citizens and taxpayers to express their views at the public hearing and is intended to more fully inform the public of what is being considered. It ensures the public has an adequate opportunity to support or oppose the enactment.  It is also intended to ensure that Council is fully informed by the public.

51.    Public hearings are subject to general principles of due process. The notice must fairly and reasonably apprise those whose rights may be affected by the nature and character of the action.  *Brown v. County of Charleston/Charleston County Council*, 303 S.C. 245, 399 S.E.2d 784 (Ct. App. 1990).

52.    The County notice format for the FY2024 and FY2025 Budget Ordinances differs from the format required in the Notice of Public Hearing.

53.    The value of a "Mill" as stated by the Greenville County Administrator as of April 5, 2023 was $2,975,570.00.   Therefore, the proposed 11 mill increase in ad valorem taxes amounted to $32,731,260.00 in total additional revenue. Of that $22,019,218.00 was the additional amount of General Fund revenue expected from the 11 mill increase. Accordingly, the eventual 7 mill increase increased additional revenue by $20,828,990.00 and General Fund revenue by $14,012,229.00.

**Public Hearing Notice for FY 2024 Budget Ordinance Was Inaccurate**

54.     The FY2024 Budget Ordinance, introduced at first reading on May 16, 2023, listed Total General Fund Revenue as $245,440,106.00, Special Revenue Fund as $88,464,120.00, Debt Service as $32,917,127.00, Internal Debt Service as $47,856,114.00 and Total Enterprise Fund as $29,134,865.00 and a millage rate of 59.8 mills.

55.     The **Notice of Public Hearing** that was published in the Greenville Journal on May 19, 2023 (3 days later) for the June 6, 2023 Public Hearing for the FY2024 **listed different sums**: **These figures were inaccurate**. The notice listed total General Fund Revenue as $231,998,362.00 versus $245,440,106.00 contained in the Ordinance at first reading, Special Revenue Fund as $85,724,194.00 versus $88,464,120.00 contained in the Ordinance, Internal Debt Service Fund as $45,816,483.00 versus $47,856,114.00 contained in the Ordinance and Enterprise Fund as $23,672,174.00 versus $29,134,865.00 contained in the Ordinance.  Therefore, the notice of public hearing was false and not in compliance with the Statute.

56.     The Notice of Public Hearing for June 6, 2023 for the FY2024 Budget also stated the FY2023 Budget had a Total General Revenue as $205,442,738.00, Special Revenue Fund as $70,590,817.00, Internal Service Fund as $39,510,252.00, Enterprise Fund as $20,549,929.00 and Total General Fund Expenditures of $208,674,646.00.  **These figures were inaccurate also**.  The FY2023 Budget* at third reading on July 20, 2021 listed Total General Fund Revenue as $213,676,673.00 versus the $205,442,738.00 stated in the notice, Special Revenue Fund as $73,608,881.00 versus $70,590,817.00 stated in the notice, Internal Service Fund as $40,806,455.00 versus $39,510,252.00 stated in the notice, Enterprise Fund as $40,806,455.00 versus $20,549,929.00 stated in the notice and total

General Fund Expenditures as $213,676,670.00 versus $208,674,646.00 stated in the notice. **This also made the percentages listed inaccurate.**

(*There were two amendments to the FY2023 Budget Ordinance in the total amount of $1,400,000.00 that could not have significantly changed these numbers. There were no supplemental appropriations since for the FY2023 Budget.)

### Public Hearing Notice for FY 2025 Budget Ordinance Inaccurate

57.  The FY 2025 Budget Ordinance at First Reading on May 16, 2023, listed Total General Revenue as $253,812,463.00 and Total General Fund Expenditures as 253,812,463.00

58.  The **Notice of Public Hearing** for June 6, 2023, **listed different sums** for the FY2025 Budget Ordinance. It listed Total General Fund Revenues proposed Revenues as $243,434,658.00 versus $253,812,463.00 in the FY2025 Budget Ordinance at first reading, proposed special fund revenue as $91,312,976.00 versus $91,331,144.00 in the FY2025 Budget Ordinance, debt service fund revenues of $28,886,068.00 versus $33,322,789.00 in the FY2025 Budget Ordinance, Internal Service Fund Revenue as $46,065,773.00 versus $47,907,303.00 in the FY2025 Budget Ordinance, Special Revenue Fund General Expenditures of $83,090,545.00 versus $91,331,144.00 in the FY2025 Budget Ordinance, Debt Service Fund expenditures of $32,563,515.00 versus $14,815,855.00, Total Internal Service Fund expenditures of $47,906,555.00 versus $47,907,303.00 in the 2025 Budget Ordinance and Enterprise Fund of $29,230,291.00 versus $30,197,951.00 in the 2025 Budget Ordinance. **These figures were inaccurate, which also made the percentages listed in the notice inaccurate**.

59.  The Notice also showed a millage rate for the current fiscal year as 59.8 (FY2024 Budget). This millage figure became inaccurate when the FY2024 Budget Ordinance was passed at 55.8 mills.

60.   The FY 2025 Budget notice could not have possibly informed the public as to what the FY2024 Budget amounts were, since they were not even passed until after the Public Hearings.

61.   The Biennium Budget process of Greenville County violates the policy of S.C. Code § 6-1-80 to inform the public as to the Budget amounts for the present Budget of Greenville County to compare those amounts to the proposed Budget for the next fiscal year.

62.   The FY2025 Budget notice did not reflect the "current fiscal year's budget," but instead reflected the proposed Budget for FY2024. This violated the statutory posting requirements to post "the total revenues and expenditures from the current operating fiscal year's". The current operating fiscal year was FY2023 and not the FY2024 Budget.

**Budget Ordinances had Inaccurate Amendments**

63.   Both Budget Ordinances also varied in many other respects from the Notice of Public Hearing published by Greenville County.

64.   The FY 2025 Budget Ordinance that passed on July 18, 2023 was far different than what was noticed at public hearing.

65.   On June 6, 2023, Council amended both Budget Ordinances at second reading from an 11 mill increase to a 7 mill increase.

66.   A 4 mill reduction in each Budget should have resulted in a corresponding reduction of $11,902,280.00 in revenues and expenses. (4 mills x $2,975,570.00 per mill = $11,902,280.00)

67.   Instead, the FY2024 Budget what was passed at third reading had expenditures only reduced in revenue and expenditures in the amount of $3,887,785.00 versus

$11,902,280.00 that it should reflect. For FY2025 the amount of revenue and expenditures only reduced $3,376,931.00.

68.   Therefore, each Budget retained more than $8,000,000.00 in taxes and expenditures than what County Council decided.

**Both Notices of Public Hearings had Inaccurate Figures, Percentages,
Faulty References and Omitted Information.**

69.   The County's Notice of Public Hearing failed to accurately state (a) the actual amounts and percentage variances of the Budget Ordinances already read at First Reading, and (b) the actual amounts and percentage variances from the previous year's Budget.  Also because of Biennium Budget used by County Council, any references in the Notice to a "previous year's budget" in regard to the FY 2024 Budget actually references the proposed previous year's budget, not the actual previous year's budget.  Furthermore, an important line item in both of the budget Ordinances was omitted in the Notice of Public Hearing. Capital Project Funds of $17,086,544.00 for FY 2024 and $14,815,855.00 for FY 2025 were omitted from the Notice.  Lastly, the Ordinance passed at third reading did not accurately reflect the amount of revenue and expenses reduced at second reading. All these violations failed to adequately inform the public as to what was being considered by County Council.

70.   Wherefore, the Plaintiff is informed and believes they are entitled to a declaration by this Court invalidating both Ordinances, an Order for future compliance the statutory and ordinance requirements, plus attorneys' fees and costs of this action.

**THIRD CAUSE OF ACTION**
**(Invalidity of the Budget Ordinances for FOIA violations)**

71.   The Plaintiffs incorporate by reference the preceding allegations as if fully restated herein.

72.    The South Carolina Freedom of Information Act states its purpose: "it is vital in a democratic society that public business be done in an open and public manner so that citizens shall be advised of the performance of public officials and the decisions that are reached in public activity and in the formulation of public policy." S.C. Code §30-4-15.

73.    "The essential purpose of FOIA is to protect the public from secret government activity." *Lambries v. Saluda County Council*, 409 S.C. 1 at 8–9, 760 S.E.2d 785 at 789 (citing *Wiedemann v. Town of Hilton Head Island*, 330 S.C. 532, 535 n. 4, 500 S.E.2d 783, 785 n. 4 (1998)). *See also*, *Brock v. Town of Mount Pleasant*, 415 S.C. 625, 785 S.E.2d 198 (S.C. 2016).

74.    A public hearing is required before County Council adopts a budget. S.C. Code Ann. § 4-9-130; S.C. Code Ann. § 6-1-80.

75.    A public hearing is one in which the "general public may speak and express views on governmental and policy considerations." *See, South Carolina Department of Highways and Public Transportation v. Dickinson,* 281 S.C. 134, 341 S.E. 2d 134 (1986).

**FOIA Violation.  No Timely Minutes of May 22, 2023 Meeting.**

76.    On May 22, 2023, County Council held a Budget Workshop. Minutes of this meeting were not published until August of 2023 and have not been approved by County Council. Without minutes promptly produced, the public is unable to be informed about an ongoing issue being considered by County Council. The **lack of timely meeting minutes** violates S.C. Code § 30-4-90(b).

**FOIA Violation. No Minutes of Prior County Council Budget Workshops**.

77.    Plaintiffs have discovered that minutes of prior County Council Budget Workshops in June 17, 2021, May 29, 2019, June 6, 2017 and May 28, 2015 have not been publicly disclosed

and likely don't exist. Published agendas and minutes for 2013 do not indicate a Budget Workshop for that year. Plaintiffs are informed and believe that no minutes of those meetings have ever been produced in violation of S.C. Code § 30-4-90(a).

### FOIA Violation. No Approved of Minutes.

78.  The Defendants have a policy of not approving minutes of workshops. Minutes' usefulness goes well beyond the mere satisfaction of a statutory requirement. Minutes are necessary to confirm what was acted on and agreed to at a meeting and to record discussions to ensure no ambiguity exists in what was actually decided. Without agreed-upon minutes, individual recollections of what transpired are bound to differ, and they will increasingly differ over time. Approved minutes have several valuable administrative uses. Ordinances, resolutions, policies, and other official pronouncements represent a list of "things to do" for the administrative arm of the County. Also, discussions recorded in the minutes relating to the adopted acts, or even to matters not adopted, may give administrative personnel and the public strong insight into how the legislative body expects a matter to be treated or administered.

### FOIA Violation. Secret Meeting June 6, 2023

79.  Further, Public bodies must give written notice of all public meetings.

All public bodies . . . must give written public notice of their regular meetings at the beginning of each calendar year. The notice must include the dates, times, and places of such meetings. An agenda for regularly scheduled or special meetings must be posted on a bulletin board in a publicly accessible place at the office or meeting place of the public body and on a public website maintained by the body, if any, at least twenty-four hours prior to such meetings. All public bodies must post on such bulletin board or website, if any, public notice for any called, special, or rescheduled meetings. Such notice must include the agenda, date, time, and place of the meeting, and must be posted as early as is practicable but not later than twenty-four hours before the meeting. S.C. Code Ann. § 30-4-80.

80.  "Every meeting of all public bodies shall be open to the public unless closed pursuant to § 30-4-70 of this chapter." S.C. Code Ann. § 30-4-60.

81.  "All public bodies shall keep written minutes of all their public meetings." S.C. Code Ann. § 30-4-90 (a).

82.  "The minutes shall be public records and shall be available within a reasonable time after the meeting." S.C. Code Ann. § 30-4-90 (b).

83.  Plaintiffs are informed and believe County Council held a **<u>closed and unannounced meeting</u>** on the Budget on June 6, 2023, with a quorum (7 members) present (S.C. Code § 30-4-20(d)), in violation of S.C. Code Ann. § 30-4-60 (Meetings of Public Bodies Shall be Open), S.C. Code Ann. § 30-4-80 (Notice of meetings of public bodies), and S.C. Code Ann. § 30-4-90 (Minutes of meetings of public bodies).  At that meeting a poll took place about the pending votes and efforts were made to encourage Councilors to support the Budget. With a quorum present this should have been publicly announced, open to the public, and minutes of that meeting should have been taken.

**Other Potential FOIA Violations.**

84.  Plaintiffs are informed and believe that other instances of violations of the Freedom of Information Act will be found during discovery.

85.  Based upon the County's failure to comply with the Freedom of Information Act the Plaintiffs request an invalidation of the enactments of the FY 2024 and FY 2025 Budget Ordinances and other ordinances or actions that occurred at the June 6, 2023 meeting and an order prohibiting future violations plus attorney's fees and costs of this action.

<u>**FOURTH CAUSE OF ACTION**</u>
**(Failure to attend public meetings in person)**

86.  The Plaintiffs incorporate by reference the preceding allegations as if fully restated herein.

87.    There is no rule of County Council, no state law nor any parliamentary rules that allow a member of Greenville County Council to vote by audio feed to Council Chambers.

**Councilors Attending Meetings by Audio Feed.**

88.    Plaintiffs are informed and believe that while County Council was considering the Budget Ordinances, Councilor Mitchell was absent for the May 16, 2023 meeting of County Council and was not physically or visibly present and voted by audio feed to Council chambers on June 6, 2023, June 20, 2023, and June 23, 2023.  Councilor Harrison was not physically present and voted by audio on June 23, 2023. Those Councilors were not physically or visibly present, yet they voted in favor of passage of the Ordinances by audio feed to Council Chambers.

**FOIA Violation. Inaccurate Minutes**.

89.    On June 6, 2023, all members were marked present in the minutes when the public hearings were held. However, Councilor Mitchell did not attend in person and participated only by audio feed.  His absence or status of voting by audio feed was not reflected in the minutes.

90.    The Clerk marked all County Council members present at each meeting, but all members did not personally appear, and at times one or two members appeared solely by audio. Previously, the minutes reported when a member attended by Zoom, but the audio appearances were not noted for these meeting. The failure of the minutes to reflect that manner of attendance violates the minutes requirement of the South Carolina Freedom of Information Act.

91.    The public's inability to see a Council member participate in public debate of important issues for Greenville County limits their ability to gauge the performance of their public officials and to assure decisions are reached in public activity and in the formulation of

public policy. Audio appearances prohibit the public from ascertaining a council member's attention to or interest in a particular subject, and they make it impossible for citizens to report fully the activities of their elected officials.

**Violation of Democratic Society/Spirit and Intent of FOIA.**

92.  Allowing Council members to vote via audio feed contravenes the statutory and common law of a democratic society. The public cannot ascertain if that voice is even that of the purported Council member. The Freedom of Information Act provides that "no chance meeting, social meeting or electronic communication may be used in circumvention of the [Act]." Participation by audio feed should be similarly prohibited as it likewise violates the spirit and intent of open meetings.

93.  Mason's Legislative Manual adopted for parliamentary procedure of Greenville County Council only allows voting by persons "present" and Plaintiffs are unaware of any authority allowing members of a legislative body to "phone it in" which is what the audio feeds are equivalent to.

94.  The Plaintiffs are informed and believe that the court should invalidate the votes of the members absent, find the Defendants violated the spirit and intent of the Freedom of Information Act, overturn the FY24 and FY25 Budget Ordinances' adoption, declare that the practice these practices are prohibited, issue appropriate injunctive relief and award attorney's fees and costs of this action.

**<u>FIFTH CAUSE OF ACTION</u>**
**(Financial Non-compliance of Greenville County and Greenville Council)**

95.  The Plaintiffs incorporate by reference the preceding allegations as if fully restated herein.

96.  As set forth above as part of the Home Rule Act the Legislature passed S.C. Code § 4-9-140:

Council may make **supplemental appropriations** which shall specify the source of funds for such appropriations. The **procedure** for approval of supplemental appropriations **shall be the same as that prescribed for enactment of ordinances**.

For the purposes of this section a supplemental appropriation shall be defined as **an appropriation of additional funds which have come available during the fiscal year and which have not been previously obligated** by the current operating or capital budget. The provisions of this section shall not be construed to prohibit the transfer of funds appropriated in the annual budget for purposes other than as specified in such annual budget **when such transfers are approved by the council**.

*Id.,* (Emphasis added.)

97.    The Greenville County Code of Ordinance provides similarly:

§ 7-82 ADJUSTMENTS TO BUDGET.

(a)  Supplemental appropriations. A supplemental appropriation is an allocation of funds to a county department or agency for a specific purpose not anticipated when the original budget appropriation was approved. **Council may make supplemental appropriations** which shall specify the sources of funds for such appropriations. **The procedure** for approval of supplemental appropriations **shall be the same** as that prescribed for enactment of ordinances.

*         *         *

**Supplemental financing for any purpose shall not be approved unless at least 3/4 of all council members vote for its approval at a regular meeting**.

(b)  Fund transfers.

(1)    **Intradepartmental transfers**. Funds appropriated in the annual budget may be transferred **by the county administrator** between line-item accounts within a department or non-department account for the purpose of providing continuing county services approved by council in the budget ordinance.

*         *         *

(2)    **Interdepartmental transfers**. All fund transfers from 1 department or non-department account to another department or non-department account **must be approved by the county council**. Transfers of funds from the non-departmental salary account to line department salary accounts can be made by the Management

and Budget division to reflect merit increases and market adjustments as approved in the budget process by County Council without further action.

§ 7-83 EXPENDITURE OF APPROPRIATED OR NON-APPROPRIATED FUNDS.

(a)   Generally. **Budget appropriations are enacted by the county council in the form of an ordinance**. The resulting appropriations approved by ordinance constitute legal authority for departments and/or agencies to make expenditures and incur obligations in providing services. All expenditures:

*       *       *

(f)   **Nonbudgeted expenditures**. Expenditures for nonbudgeted items are **prohibited**.

**Council Cannot Change the Budget Except by Ordinance.**

98.   In 2006, after the Greenville County Administrator threatened to transfer funds budgeted for the Deeds Office because "another department needs the money as a result of the increase in gasoline cost" the South Carolina Attorney General opined that although Greenville County Council had the authority to transfer funds within its annual budget, it had to do so in compliance with S.C. Code 4-9-140 and Greenville County Code 7-82(b)(2).  He stated that although a transfer of funds from one department to another is not a supplemental appropriation "**we find Council must adopt an ordinance in order to transfer funds**.  In a prior opinion we determined that **an amendment to an ordinance relating to appropriations must be done by ordinance**."  He further stated, "it is our opinion that the [County] Administrator acting alone may not effect such a transfer without the satisfaction of these requirements."  Op.Atty.Gen. May 8, 2006. (Emphasis Added.)

99.   Budget approvals in Greenville County require a supermajority vote of 8 members present.

100.  Plaintiffs are informed and believe that a review of the archived minutes of Greenville County Council from 1991 to present shows frequent use of supplemental appropriations

by County Council averaging 4 or 5 a year until 2007, and with the exception of Hospitality Funds, E911 appropriation, a children's theatre appropriation in 2016, and a development project appropriation in the same year, there have been essentially no supplemental appropriations presented to Greenville County Council.  There are two reasons for this: (1) It takes a 3/4 vote of Council to pass a supplemental appropriation, and (2) The County Administrator transfers funds when he feels like it.

101.    Plaintiffs are informed and believe these transfers without adoption of an ordinance or approval of County Council have continued unabated since the decision of the Attorney General in 2008.  The principle that you cannot amend an ordinance except by the adoption of another ordinance has been well accepted and established since 1978 when the Attorney General stated, "the ordinance relating to appropriations may be amended only by ordinance." Op.Atty.Gen. July 14, 1978.

**Audits Show Unlawful Transfers and Violation of Accounting Principles.**

102.    The annual external audit for Greenville County for fiscal year ending June 30, 2018 stated, "The County prepares its Fund budgets on a basis of accounting that differs from accounting principles generally accepted in the United States."  The audit also stated the "unassigned fund balance for the County's General Fund was $48,969,993.00 or 31 percent of total General Fund Expenditures. The unassigned fund balance is available for spending at the discretion of the County."  This same audit also found sub-funds without legally adopted budgets to amount to $7,832,797.00.

103.    The FY2019 audit stated that "the legal level of budgetary control is at the department level.  The County Administrator is authorized to transfer budgeted amounts within a department, except for the purchase of non-budgeted equipment and hiring of personnel.

County Council must approve any revisions which alter the total expenditures of any department." The report again stated that "The County prepares its Fund budgets on a basis of accounting that differs from accounting principles generally accepted in the United States." The report went on to show that the County had spent $2,562,053.00 more than was appropriated for the General Fund.    The audit also stated that;

The **total $6,534,499 General Fund transfers out are** $2,504,061.00 to Debt Service Funds for capital lease debt service payments, $3,897,860.00 to the Health and Dental Fund to cover employer insurance premiums, and $132,578.00 to the Federal and State Grant Fund to cover matching grants. **Transfers out of the Parks, Recreation and Tourism Fund totaling $3,324,632.00** were made to cover debt service payments of $1,290,502, capital projects of $1,750,000, and employer insurance premiums of $284,130. Transfers of $61,802 were made from the Federal and State Grant Fund, with $42,860 to the General Fund for reimbursement of matching funds and $18,942 to the Health and Dental Fund to cover employer insurance premiums. **Transfers out of Nonmajor Governmental Funds totaling $26,678,171.00** include: $6,600,000.00 from the Infrastructure Bank Fund to the Road Maintenance Fund, $3,795,838.00 from the Hospitality Tax Fund to cover Hospitality Tax Certificates of Participation debt service payments, $2,500,000.00 from the Hospitality Tax Fund to the General Fund to cover tourism related public safety expenses, $6,600,000.00 from the Road Maintenance Fund to the General Fund, $2,297,549.00 from the Infrastructure Bank Fund to cover debt service, $1,884,784.00 from the Hospitality Tax Fund to the Parks, Recreation and Tourism Fund for quarterly operating expenses, and $3,000,000.00 from the Infrastructure Fund to the Capital Projects Fund to fund various capital projects. Also, **$648,320 was transferred from the Stormwater Fund** for capital lease payments of $486,050.00 and employer insurance premiums of $162,270.00. (Emphasis added)

104. The FY2020 audit revealed $1,192,626.00 in non-departmental expenditures over appropriations which were funded by the available fund balance.  Capital outlay was $19,921,086.00 in excess expenditures over appropriations.   There was a total of $22,255,344.00 in expenses that exceeded the amounts appropriated.

105. The FY2021 audit showed relatively low amounts of expenditures over appropriation amounts.

106. However, the FY2022 audit showed an excess of expenditures in the general fund of $1,730,574.00 and $8,887,064.00 in Community Development Capital Projects. There was a total of $29,150,018.00 in expenditures over appropriations.

**Direct Evidence of Transferring Funds Unlawfully.**

107. In the minutes of the March 19, 2019, County Council meeting the following was stated:

> Joe Kernell stated that he wanted to follow up with an email sent to Council regarding a request from Greenlink to increase its current year funding in the amount of $147,875.00…Mr. Kernell indicated that... Greenlink needed money fairly soon... Councilor Taylor asked if the request would be considered a supplemental appropriation. **Mr. Kernell stated the funds could be taken out of a non-departmental account**…Mr. Kernell stated that **he was trying to fulfil the request as soon as possible and could do so by Council giving their approval by email**; the item could also be presented to the Finance Committed, if Council preferred. The item was referred to Finance Committee. (Minutes of County Council Meeting March 19, 2019.) (Emphasis added.)

108. On April 2, 2019 Greenville County Council approved the request for additional funding of Greenlink by a simple voice vote without a public hearing or an ordinance amending the Budget. The law requires the County Council to do this by Ordinance.

109. Plaintiffs are informed and believe that numerous funds are being spent for purposes other than those designated in the budget without Council's knowledge and approval, without the enactment of a supplemental appropriation ordinance or without an ordinance amending the Budget Ordinance. This violates the constitutional, statutory, and decisional laws of the State of South Carolina.

110. Plaintiffs are informed and believe that non-departmental account monies are routinely transferred by the County Administrator for purposes not otherwise budgeted in the annual budget, without the approval of County Council in violation of County Code 7-81(a) which states: "Appropriation of funds shall be made **only by county council** to departments and

agencies to provide public services to county citizens." and County Code 7-82(f): "Expenditures for nonbudgeted items are prohibited."

111.    This concept is easier than the County may contend. The County Administrator is not an elected official and only County Council is authorized to appropriate public funds and only County Council can alter the appropriation of public funds done by ordinance by an ordinance amending the previous ordinance. In other words, public money cannot be redirected to purposes other that which is authorized by an ordinance.

**Unlawful language in the Budget Ordinances.**

112.    The FY2024 and FY25 Budget Ordinances contain language that "All line-item accounts as set forth in the FY2024 [or FY2025] Budget Proposal, as adjusted and established by the aforementioned appropriation, are herein established and incorporated as if fully set forth and shall be expended, transferred, or supplemented pursuant to the Greenville County Code. **The County Administrator is authorized to transfer funds between departments to make necessary changes and adjustments to reflect Council amendments to the proposed budget.**" This language is unlawful as set forth above. Only an ordinance can make adjustments to the budget ordinances. Likewise, Greenville County Council cannot delegate their responsibilities over the Budget to the Administrator. These Ordinances have no severability clauses and thus if this provision is invalid the entire Ordinance are invalid.

113.    Plaintiffs request that the Court order that the enactment of the FY 2024 and FY 2025 Budget Ordinances should be invalidated based upon the County's flawed and illegal budget practices and the unlawful language in these ordinances, and to invalidate any past, present or future expenditures of funds not authorized by Ordinance to be prohibited due

to the Defendants' failure to use the legal procedures required in supplemental appropriations or amending appropriations ordinances and because of their unlawful delegation of their authority. Plaintiffs also request attorneys' fees and costs of this action.

## SIXTH CAUSE OF ACTION
### (Inhibition of Public Participation)

114.    The Plaintiffs incorporate by reference the preceding allegations as if fully restated herein.

**Limitation on Duration of Participation.**

115.    The Plaintiffs are informed and believe that **County Council inhibits public participation in Public Hearings** by limiting the sign-up list to individuals who appear in person 30 minutes before the scheduled meeting and by limiting each person's presentation to no more than 3 minutes with 30 minutes allotted to each side. (*See*, Rule IV(G) of the Rules of Greenville County Council). That means no more than 10 people can speak against an annual Budget proposal exceeding $386,000,000.00 and a combined total for the two years under consideration of over $784,000,000.00 and whose Budget proposal consists of 156 pages.

**Discouraging Freedom of Participation.**

116.    Plaintiffs are informed and believe that people wishing to speak are required to have a valid I.D. on their person, and they cannot appear and speak on items that have already been held at a public hearing, or that have not been through a standing committee. Persons wishing to speak for or against the Budget Ordinances at first reading were prohibited from speaking at all on May 16, 2023, since the ordinances had not been through committee.

**Limitation on Occasions of Freedom of Participation.**

117.    Persons wishing to speak for or against the Budget Ordinances on June 20, 2023, or June 23, 2023, were prohibited from speaking because a public hearing had already been held

on June 6, 2023, despite the fact that the Ordinances for FY2024 and FY2025 had been materially amended at second reading, and despite the fact that the Rules of Council permit such participation after a matter has been materially amended after public hearing. *(See,* Rule III (G) of the Rules of Greenville County Council).

### Influencing Freedom of Participation.

118.  Furthermore, Plaintiffs are informed and believe that on June 6, 2023, persons wishing to speak at the public hearings were discouraged from signing up and/or attending. When Council doors opened to the public, the room was already full of county employees and supporters**.** According to the minutes, the first person that spoke in favor was the director of the Greenville Housing Fund. The second in favor was the executive director of Greenville Connects. The next in favor was Restaurateur Carl Sobocinski. The next in favor was Greenville Tech Foundation Board Member John Slipke. The next in favor was Bryan Brown, another Greenville Housing Fund Official. The next in favor was Community Activist Pranceton Williams. The next in favor was Bernard Kadio a faculty member at Bob Jones University. The next in favor was Lauren Stephens, a Social Ministries Director of the Salvation Army in Greenville. The next in favor was Tina Harris, a coordinator at FAVOR Greenville, and last in favor was Eleanor Dunlap on the executive committee of the Greenville Housing Fund.  Plaintiffs are informed and believe that those people did not line up at 5:30 p.m. to sign up so they could speak before the meeting.  It is more likely than not that they were given spots to speak in favor of the county budgets while ordinary citizens were discouraged from participation.

119.  This conduct violates the spirit and intent of the legislature that public hearings be held for important decisions by local government so that they can engage a wide audience in

information sharing and discussion and to increase an awareness of an issue or proposal, and can be a starting point for, or an ongoing means of engaging, further public involvement. When done well, they help build a feeling of community. The legislature has never intended that they be minimized and mis-advertised.  As stated in S.C. Code §30-4-15;

> The General Assembly finds that it is vital in a democratic society that public business be performed in an open and public manner so that citizens shall be advised of the performance of public officials and of the decisions that are reached in public activity and in the formulation of public policy. Toward this end, provisions of this chapter must be construed so as to make it possible for citizens, or their representatives, to learn and report fully the activities of their public officials at a minimum cost or delay to the persons seeking access to public documents or meetings.

120.    The Plaintiffs are informed and believe that a limitation of 3 minutes and 30 minutes total in the context of a massive budget raising taxes 22.5%, discouraging public participation, not opening a subsequent public hearing after the figures given for the public hearing drastically changed and influencing freedom of expression is an unreasonable limitation on freedom of speech guaranteed by Article 1, Sec. 2 of the South Carolina Constitution.

121.    The Plaintiffs request that this court declare the enactment of the FY2024 and FY2025 Budget Ordinances invalid due to the restrictions on public participation, for an order barring these practices in the future and for attorney's fees and costs of this action.

**<u>SEVENTH CAUSE OF ACTION</u>**
**(Totality of Non-Compliance)**

122.    The Plaintiffs incorporate by reference the preceding allegations as if fully restated herein.

123.    Plaintiffs are informed and believe that based upon the Defendants' non-compliance with the constitutional, statutory, decisional and generally accepted principles of appropriate budgetary practices, use of the Biennium Budget process, FOIA violations, public hearing

notice non-compliance, invalid ordinance adoptions, variances of the public hearing notices, restrictions, and hindrance of public participation that this court should invalidate the Budget Ordinances that were adopted, bar the use of the Biennium Budget Process, order compliance with generally accepted accounting principles and with the South Carolina constitutional, statutory and decisional dictates for budget adoption, public hearings and fiscal compliance and award the Plaintiffs attorneys' fees and costs of this action.

### EIGHTH CAUSE OF ACTION
**(Temporary, Preliminary and Permanent Injunctive Relief)**

124.    The Plaintiffs incorporate by reference the preceding allegations as if fully restated herein.

125.    The Plaintiffs will be immediately and irreparably impaired by the enforcement of these Ordinances and a continuation of the harmful practices of the Defendants.

126.    The Plaintiffs will be harmed by any future unlawful adoption of Budget Ordinances, any unlawful transfer of funds without an ordinance, use of the Biennium Budget process, the failure to follow generally accepted practices and in accordance with the South Carolina constitutional, statutory, decisional, and regulatory requirements and the limitation on public participation.

127.    The Plaintiffs request temporary, preliminary, and permanent restraining orders/injunctive against the enforcement of these ordinances, practices and policies and future unlawful enactments, practices, and policies, plus attorneys' fees and costs.

**WHEREFORE**, having fully pled, the Plaintiffs request the following;

1.      Invalidation of the subject Ordinances.

2.      Invalidation of the Biennium Budget Process.

3.      Invalidation of the unlawful budgetary practices of the Defendants.

4.      Removal of the restrictions on public participation at public hearings.

5.      Temporary, preliminary, and permanent restraining orders/injunctive against the
Defendants' misconduct.

6.      That the Court determine the respective rights, obligations, duties, and liabilities of
the parties.

7.      For attorneys' fees and cost of this action pursuant to S.C. Code Ann. § 15-77-300,
the South Carolina Freedom of Information Act, and Rule 54 SCRCP.

8.      For such other and further relief as the court deems just and proper.

Respectfully submitted,

THE CARPENTER LAW FIRM, PC

s/ James G. Carpenter
Federal Bar No. 5020
819 East North Street
Greenville, SC 29601
(864) 235-1269
jim@carpenterlawfirm.net
Attorney for the Plaintiffs

THE CHILDS LAW FIRM L.L.C.

s/ Robert C. Childs III Esq.
Federal Bar No. 123
PO Box 1519
Travelers Rest, SC 29690
(864) 242-9997
Robert@LawyerChilds.com
Attorney for the Plaintiffs

October 3, 2023